[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
CT Page 9480
The above cases concern an application submitted by the defendant Fox Hill Land Company (hereinafter, "the applicant or Fox Hill") to develop a 35.8 acre parcel on the westerly side of Wilks Pond Road in Berlin, Connecticut into a fifty lot subdivision. The plaintiffs herein, Barbara Edelson and Clyde Selner have appealed from the decisions of both the inland wetlands and watercourses commission of the Town of Berlin (hereinafter, "the wetlands commission") and the planning commission of the Town of Berlin ("hereinafter "the planning commission").
 a.
A brief history of the development proposal is required in order to fully understand this contest. First, the plaintiff Barbara Edelson owns property which abuts the subject parcel. The plaintiff Clyde Selner is the former chairman of the wetlands commission (Exhibit A). On or about April 7, 1992, the applicant filed a subdivision application to develop the property into a fifty lot subdivision. It also filed an application with the wetlands commission as the proposal contained regulated activities.[1] On June 2, 1992, after a public hearing, that commission denied the application finding that the "applicant had not submitted sufficient information to evaluate the impacts of the development of the wetlands system and determined the proposed storm drainage system would have an adverse effect on the adjoining wetlands." (sic). (Complaint, CV 93-0455272, par. 8)[2]. The planning commission ultimately approved the application, with some revisions and the decision was appealed to this court, CV 92-0452687.[3]
According to the planning appeal complaint, the applicant filed another application with the planning commission although the exact date is not indicated. (Complaint, CV 93-0455272, par. 12). While no application was filed with the wetlands commission, the applicant held a series of meetings and discussions with the staff and commission members in the summer and fall of 1992. Specifically, on June 25, 1992, the Assistant Town Engineer, James Horbal, wrote to the Town Attorney, E. Timothy Sullivan, requesting an opinion on whether activities proposed by Fox Hill, in a revision to the first wetlands application, constituted a regulated or nonregulated activity under the wetlands regulations. (Return Items, Horbal 3; IW1-E). Attorney Sullivan responded to Mr. Horbal by letter dated July 1, 1992 indicating essentially that if the applicant proposed no activity for the wetlands, a submission to the commission CT Page 9481 would not be required. (Return Item, Horbal 4). Notwithstanding this correspondence, on October 22, 1992, the applicant and his agents met with certain commissioners and town staff at two different meetings. (Return Item, Horbal 5).
On November 23, 1992, the wetlands commission held a special meeting with the applicant and its agents to discuss the proposed subdivision (Return Item IW1-D). Mr. Valentine, the developer, requested a decision from the commission as to whether the plan was acceptable. The commission discussed the proposal but made no formal decision. On November 30, 1992, the plaintiff Selner filed his Notice of Intervention pursuant to General Statutes § 22a-19 with the wetlands commission.[4]
(Exhibit A).
On or about November 24, 1992, the applicant filed another request with the planning commission to develop the parcel. (Return Item P-A). On or about November 30, 1992, Mr. Selner filed a Notice of Intervention with the planning commission (Return Item, P-K). On or about December 22, 1992, the planning commission held a public hearing on the application at which time the plaintiffs voiced their objections and argued that wetlands approval was required. (Return Items P-B; GG). The planning commission, through its chairman, Cynthia Wilcox, wrote to the wetlands commission chairman, James McCarthy, on December 28, 1992, requesting "notification as to whether this application includes any activity which requires a permit from your commission." (Return Items P-V; IW1-C).
The wetlands commission met on January 5, 1993, and without allowing the applicant or Mr. Selner the opportunity to offer input on the referral, determined that the proposed development did not constitute a regulated activity. (Return Items, IW1-A, F; P-Y). The planning commission, by a vote of4-1, granted the special permit on January 12, 1993. (Return Item, P-EE).
The plaintiffs appealed the actions of both commissions in cases returnable February 12, 1993. Essentially, the plaintiffs argue that the planning commission approval is invalid because, inter alia, it did not comply with General Statutes §§ 8-26 and 8-3(c) on referrals to the wetlands commission and with § 22a-19 and due process of law under both the state and federal constitutions in denying the plaintiffs the opportunity CT Page 9482 to present evidence on the application. The plaintiffs also argue that the wetlands determination is flawed due to the October meetings, the failure to comply with the referral statutes and the alleged due process violations.
While these actions were pending, Fox Hill filed an application with the wetlands commission on May 26, 1993. Section22a-19 petitions were filed by both plaintiffs and on July 6, 1993, a public hearing was held. The plaintiffs were given the opportunity to present evidence and urged the commission to take jurisdiction over the proposed subdivision. On September 7, 1993, the commission voted to approve the application and the plaintiffs appealed this decision, returnable November 9, 1993 arguing, inter alia, matters raised in the first wetlands appeal, as well as the fact that the decision was made without reviewing the subdivision plans.
After several pretrial hearings on supplementing the record with additional evidence, trial was held on the planning appeal and the first wetlands appeal on May 6, 1994. The parties agreed that the second wetlands appeal should be consolidated with the first two matters. As briefs had not yet been filed, a briefing schedule was ordered and the case was continued to June 10, 1994 for a further hearing.
 II. Discussion
 1.
At trial on May 6, 1994, the defendants stipulated that Barbara Edelson owned property abutting the subject parcel. This court, therefore, found that she was aggrieved. General Statutes §§ 8-8(1); 22a-43(a). Additionally, they stipulated (and the record is clear) that Clyde Selner filed an intervention petition pursuant to General Statutes § 22a-19 in the administrative proceedings. He does, therefore, have "statutory standing to appeal from the commission's decision" General Statutes § 22a-19(a); Red Hill Coalition, Inc. v. ConservationCommission, 212 Conn. 710, 715 (1989), to raise environmental issues. Mystic Marinelife Aquarium, Inc. v. Gill,175 Conn. 483, 490 (1978).
At the hearing on June 10, 1994, the parties stipulated to CT Page 9483 the facts at the earlier hearing. Additionally, notwithstanding Mrs. Edelson's statutory aggrievement as an abutter, she also filed an intervention petition in the latter wetlands proceeding. (Return Item IW2-E). She is therefore deemed aggrieved under both §§ 22a-43(a) and 22a-19(a). Mr. Selner, again, is deemed aggrieved to raise environmental issues.
2.
 a.
It is clear to this court that the applicant and the wetlands commission (and staff) have made this case more complicated than it need have been. What should have been a straight forward administrative proceeding, turned into a procedural nightmare.[5] Reasonable and well intentioned practices evolved into statutory violations.
Having been turned down by the wetlands commission in June 1992, the applicant modified its plans to minimize intrusion into the wetlands. Mr. Valentine sought staff review to see if the new proposal would need a permit. Indeed, as noted at trial, the Berlin wetlands regulations, at § 4.4, state that:
 4.4 To carry out the purposes of this section, any person proposing to carry out a permitted or nonregulated operation or use of a wetlands or watercourse that may disturb the natural and indigenous character of the wetlands or watercourse shall, prior to commencement of such operation or use, notify the Agency on a form provided by it, and provide the Agency with sufficient information to enable it to properly determine that the proposed operation and use is a permitted or nonregulated use of the wetlands or watercourse. The Agency or its designated agent shall rule that the proposed operation or use is a permitted or a nonregulated use or operation or that a permit is required. Such ruling shall be in writing and shall be made no later than the next regularly scheduled meeting of the Agency following the meeting at which the request was received. The designated agentCT Page 9484 for the Agency may make such ruling on behalf of the agency at any time. (Return staff Item IW1-G). (emphasis supplied).
Thus, the regulations provide a procedure for staff review to determine whether a proposed activity is regulated or nonregulated. See generally, Fuller, Land Use Law and Practice, § 15.5.
As earlier noted, Mr. Horbal wrote to the town attorney to confirm this procedure. (Return Items, Horbal 3, 4; IW1-E). It is clear, however, that the process did not end at this point with a ruling by Mr. Horbal that the proposal did not need a permit. Rather, the discussions continued. Incredibly, Chairman McCarthy wrote to Berlin Mayor Robert Peters on August 11, 1992, indicating that while Mr. Horbal had made a determination of no impact to the wetlands, "[s]everal commission members and myself have expressed concern and have requested to review the prints. My feelings are that the revised drawings could have been handled informally to satisfy commission members." (Return Item, McCarthy 4).[6] The letter was sent to the mayor because "I requested that commission members get a copy of the prints; we did not receive them; I did not want — I didn't want the prints to go by without an opportunity for commission members to review them because we were voicing our concerns. . ." (Return Item, Deposition of James McCarthy, p. 15).
As a result of these "concerns" (Return Item, Deposition of James McCarthy, p. 16), on October 22, 1992, the developer met with the commission and staff. (Return Item, Horbal 5). The commission did not, however, comply with the freedom of information statutes in conducting these meetings. Instead of noticing the matter on its agenda for a regular meeting, the commission held two separate "discussions" — each with less than a quorum. As noted by Chairman McCarthy, "[t]o keep things informal and not have a quorum, you have to keep it under four members, and that's why we set it up that way." (Return Item, Deposition of McCarthy, p. 16).
Such an improper practice does not conform with the notice and openness policy of General Statutes § 1-21 et seq. See generally, Wilson v. Freedom of Information Commission,181 Conn. 324, 328 (1980) ("the Freedom of Information Act expresses a strong legislative policy in favor of the open conduct CT Page 9485 of government. . . .") The commission cannot act in private, behind closed doors, except as authorized by statute, General Statutes § 1-21g.[7]
As earlier noted, the applicant met again with the commission on November 23, 1992, at a special meeting to get a formal decision on whether the application needed a permit.[8]
No such decision was made but one can sense, from the minutes, that there was no substantive objection. (Return Item, IW1-D). An application was filed with the planning commission the next day. (Return Item P-A). Fox Hill was seeking to build an affordable residential subdivision utilizing the provisions of section 6.10 ("Neighborhood Affordable Housing Development") of the zoning regulations. (Return Item P-FF).[9] Thus, this application was filed under both Berlin's zoning and subdivision regulations seeking both a special permit and subdivision approval. (Applicant's Brief, p. 2, f. 1).
 b.
Our legislature has, for some time, recognized the interrelationship between our land use boards in reviewing development proposals which contain wetlands. Almost seventeen years ago, the legislature passed P.A. 77-545 § 3 requiring an applicant to file a copy of a subdivision application with the wetlands commission within 10 days of filing (with the planning commission) and requiring the planning commission to give due consideration to any report filed by the wetlands commission prior to rendering its decision. In 1987, as part of the inland wetlands act amendments, P.A. 87-553, the legislature revised this language in § 9 stating:
 If an application involves land regulated as an inland wetlands or watercourse under the provisions of chapter 440, the applicant shall submit an application to the agency responsible for administration of the inland wetlands regulations no later than the day the application is filed for the subdivision or resubdivision. The commission shall not render a decision until the inland wetlands agency has submitted a report with its final decision to such commission. In making its decision the commission shall give due consideration to the CT Page 9486 report of the inland wetlands agency.
A somewhat similar provision was added to the special permit section at 8-3c requiring submittal if the application involved an activity regulated under the wetlands statutes. P.A. 87-533 § 8.
The directive to submit an application to the wetlands agency was extensively reviewed in Arway v. Bloom,29 Conn. App. 469 (1992). See also, Ventres v. Inland Wetlandsand Watercourses Commission, 25 Conn. App. 572, 575 (1991).
As noted by the Arway court, the legislation was enacted, in part, to:
 "keep a developer from . . . dangling in the winds between a wetlands agency and a planning commission. . . This way the applicant would not, as some have, go all through the subdivision procedure, get his approval and then find he could not get a building permit because he failed to get approval from the wetlands agency."
Id., 476-477, citing Rep. Polinsky, 20 H.R. Proc., Pt. 6, 1977 Sess., pp. 2411-12.
In this case, the application surely involved land which is regulated as an inland wetland — even if no activity was proposed for the wetland. See Mario v. Fairfield, 217 Conn. 164,170 (1991). Yet, this applicant clearly did not comply with the statutory scheme. It did not file an application with the wetlands agency the same day it filed with the planning commission. In fact, it never filed until May 27, 1993. (Return Item IW2-N). It is true that the applicant did not attempt to by pass the wetlands commission; it spent from June to November attempting to secure an opinion that the new proposal was not regulated. Yet, it never obtained a formal decision from either the commission, as a whole, or its agent, prior to filing the planning application.
Meanwhile, the planning commission was acting on the application. At the public hearing of December 22, 1992, the plaintiff raised the issue of the statutory referral. (Return Item P-B, pp. 1-2). After the close of the hearing, Commissioner CT Page 9487 Kern wisely raised the referral issue and noted that "it was the consensus of the commission that Mrs. Wilcox send a letter to the chairman of the IWWC requesting written communication to the planning commission regarding their opinion on any regulated activity in the wetlands." (Return Item P-B, p. 3). On December 28, 1992, the request was made. The text of the letter is interesting in that Chairman Wilcox states that "[t]he plans presented to the planning commission are the same as those reviewed by the inland wetlands and water courses commission on November 23, 1992." (Return Item P-V; IW1-C).
While the applicant may have reviewed certain plans with the wetlands commission, it did not follow the directives of the statutes. The referral statutes require that a copy of the application filed with the planning and/or zoning commission be filed with the wetlands commission. Notwithstanding the earlier review, it is certainly not uncommon for an applicant to change its proposal many times during the administrative process. Indeed, the informal review process usually results in changes to a proposal. The statutory referral section thus requires a copy of the current application to be filed — not something filed or reviewed months before.
 c.
In response to the December 28, 1992 request, the wetlands commission discussed the application at its January 5, 1993 meeting. At that time, it voted 5-0-1 to advise the planning commission that no wetlands application was required. (Return Item IW1-F). Prior to the vote, a discussion ensued concerning the request by Mr. Selner to address the commission based on his § 22-19 intervention petition. (Return Item IW1-F; stipulation of parties at trial). The commission, acting on advice of counsel, considered the action as internal-only between commissions — and thus precluded any party from offering comments. A motion made by the chairman to allow a presentation, albeit limited, did not pass.
At trial, the parties debated the issue of whether General Statutes § 22a-19(b) mandating the commission to consider the alleged unreasonable pollution requires the commission to provide the opportunity to make a presentation. It was argued that the duty to consider the proposed conduct and make a finding on whether there was a feasible and prudent alternative made this process different from a routine referral under § 8-26
CT Page 9488 or an intervention motion under § 52-102. Conceptually, this court does not disagree with this premise but finds, based on guidance from a somewhat similar case, that the legislature did not specifically require the commission to hold a hearing prior to making its decision.
In Summit Hydropower Partnership v. Commissioner ofEnvironmental Protection, 226 Conn. 792 (1993), our Supreme Court discussed the impact of the lack of a statutory requirement to hold a public hearing on the decision of the Commissioner of Environmental Protection in denying a certificate that a proposed hydroelectric facility would comply with federal and state water quality standards. Even though the Commissioner did in fact hold a public hearing, the court noted that one was not required by statute. It observed, at 805, "[t]he intent of the legislature . . . is to be found not in what the legislature meant to say, but in the meaning of what it did say" citing Burnham v. Administrator of the UnemploymentCompensation Act, 184 Conn. 317, 325 (1981). The legislature, of course, omitted the requirement of a hearing in section 22a-19
and whether unfortunate or not, this court cannot hold that the commission erred in not affording Mr. Selner the opportunity to comment at the January 5, 1993 meeting.[10] This court believes that Summit Hydropower controls this issue.
 "Absent such language by the legislature, this court cannot engraft amendments into the statutory language. . . (citations omitted). It is not the province of the court to supply what the legislature chose to omit. The legislature is supreme in the area of legislation, and the courts must apply statutory enactments according to their plain terms." Red Hill Coalition, Inc. v. Town Plan Zoning Commission, 212 Conn. 727, 736 (1989) (remaining citation omitted).
As noted by the applicant, the petitioner was not precluded from filing written materials and arguments.
After defeating Chairman McCarthy's motion to allow a brief presentation, the commission voted, 5-0-1, to "allow Staff draft a letter giving the planning commission notice that we concur with Staff's original ruling that the Fox Hill Subdivision need CT Page 9489 not bring an application before the inland wetlands commission." (sic). (Return Items IW1-F; P-Y).
 d.
The planning commission was entitled to rely on this letter. In Arway v. Bloom, supra, our Appellate Court reviewed a similar question: whether a zoning decision which is based on a report from the wetlands agency pursuant to the referral statutes (§ 8-3(g) and § 8-3c(b)) can be sustained if the wetland commission's decision is determined to be illegal. In reviewing the directive of the statute ("the commission shall not render a decision on the application until the inland wetlands agency has submitted a report with its final decision to such commission. In making its decision the zoning commission shall give due consideration to the report"), the court held that "due consideration" does not require that the zoning decision be based on the report of the wetlands commission. Id., 474.
In discussing the parallel referral in the subdivision statute, § 8-26, the court noted "[t]here is nothing to indicate that the validity of the planning commission's decision was intended to be contingent upon the ultimate validity of the wetlands decision. See T.J. Tondro, Connecticut Land Use Regulation (2d. Ed. 1992), p. 5."
The court held, at 475:
 The history of Public Acts 1987, No. 87-533 indicates that the legislature's main concern at the time was simply to coordinate the approval processes of the zoning and wetlands commissions, so that a developer would not proceed with activities affecting an inland wetland before obtaining all necessary permits. The act strengthened the existing protections afforded by the wetlands law, which has, since its enactment in 1972, specified that "no regulated activity shall be conducted upon any inland wetland and watercourse without a [wetlands] permit." General Statutes § 22a-42a(c). There is no indication that the legislature was attempting to make the zoning commission either a rubber stamp or a CT Page 9490 review board for the wetlands commission, or to alter in any way either commission's respective jurisdiction or the statutory time limits for rendering each decision.
Accordingly, the court stated that "[w]hen the zoning commission receives a copy of the `report' prepared by the wetlands commission, it is not required to review (or await judicial review of) the validity or invalidity of that commission's final decision as a precursor to rendering its own decision." Id., 479. The court further added
 Any other approach would deprive the zoning commission of the authority to render its own final decision until all appeals of the wetlands commission's decision have been exhausted. A reversal or invalidation of the wetlands commission's decision would then require the applicant to reapply for both zoning and wetlands approval, and run the risk and concomitant expense of invalidation all over again. We do not believe the legislature intended to create such a costly and potentially endless application process.
Id., 481; Ventres v. Inland Wetlands Watercourses Agency,25 Conn. App. 572, 575, cert. denied, 220 Conn. 921 (1991); see also, Thoma v. Planning Zoning Commission, 31 Conn. App. 643, aff'd 229 Conn. 325 (1994). While there may have been some improper actions, this court is constrained to take each event or violation in a vacuum. The October meetings were improper and the applicant failed to file its application with the wetlands commission. Yet, the applicant was surely not trying to avoid the commission; indeed, it was actively seeking a finding of non regulated activity status so it could file with the planning commission. There is no suggestion that the November 23, 1992 meeting (one day before the filing with the planning commission) was improper and the commission clearly debated the proposed activities at that meeting. This is not a case where the wetlands commission never reviewed an application that clearly contained significant or regulated activities. Rather, this is a case in which "a local land use body is composed of laymen whose procedural expertise may not always comply with the multitudinous statutory mandates under which they operate." CT Page 9491Gagnon v. Inland Wetlands Watercourses Commission, 213 Conn. 604,611 (1990).
 e.
From a substantive point of view, an agency is obviously entitled to rely on its professional staff. See Yurdinv. Town Plan Zoning Commission, 145 Conn. 416, 421 (1958) and it progeny. In this case, from the very inception of this application, even prior to the fall meetings, Mr. Horbal was of the opinion that the application involved no regulated activities. (Return Item, Horbal — 3). As noted, the inland wetland regulations, sections 4.4, clearly authorize such a review by its agent Mr. Horbal.[11] Obviously, the commission had the same opinion. (Return Item IW1-F). The plaintiff has alleged, for a number of reasons, that the proposed activities should be deemed regulated and that in total, they should be deemed significant.[12] (Return Item IW1-G § 2.1). The determination of whether an activity is regulated is a surely one for the commissionSamperi v. Inland Wetlands Agency, 226 Conn. 579, 592
(1993); Aaron v. Conservation Commission, 183 Conn. 532, 547
(1981); Fuller, Land Use Law and Practice, § 11.5, p. 214. The plaintiffs were properly concerned about possible sedimentation and erosion, the impact of fertilizers and pesticides, the impact of construction activities and the impact of surface water diversion, but this court cannot substitute its judgment for that of the agency. Burnham v. Planning Zoning Commission,189 Conn. 261, 265 (1983). The decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given. Samperi v. Inland Wetlands Agency, supra, 588, citing Huck v. Inland Wetlands WatercoursesAgency, 203 Conn. 525, 542 (1987). A review of this record indicates that the commission's finding that the activities are not regulated is supported by substantial evidence. This court notes that a different commission might deem the activities regulated. See Aaron v. Conservation Commission, supra, 547;[13]Cioffoletti v. Planning Zoning Commission, 209 Conn. 544, 558
(1989). Yet,
 "[t]he reviewing court must take into account [that there is] contradictory evidence in the record . . . but `the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being CT Page 9492 supported by substantial evidence . . . .'"
Huck, supra, 542 (remaining citations omitted); see alsoSamperi, supra, 587.
 f.
Finally, this court must determine whether the wetlands commission performed its review according to § 22a-19(b) in determining whether (a) there was unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state; and (b) whether conduct was approved which does have such affect considering relevant and surrounding circumstances and whether a feasible and prudent alternative existed. General Statutes § 22a-19(b);Samperi, supra; Manchester Environmental Coalition v. Stockton, supra. The easy answer is that it met its burden. The Commission found that the activity was not regulated.
General Statutes § 22a-38(13) defines a regulated activity:
 (13) "Regulated activity" means any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands or watercourses, but shall not include the specified activities in section 22a-40;
Pollution is defined in subsection (8):
 Means harmful thermal effect or the contamination or rendering unclean or impure of any waters of the state by reason of any waste or other materials discharged or deposited therein by any public or private sewer or otherwise so directly or indirectly to come in contact with any waters;
Additionally, the Berlin inland wetland regulations, while adopting the same definition for regulated activity, add to the definition of pollution an additional sentence: "[t]his includes, but is not limited to, erosion and sedimentation resulting from any filling, land clearing or excavation activity." CT Page 9493 (Return Item IW1-G, § 2.1).
The commission is fully empowered, to interpret its own regulations, Griffin Hospital v. Commission on Hospitals Health Care, 200 Conn. 489, 496-97 (1986), and having reviewed the application, found no activity which would deposit material or obstruct, alter or pollute the wetland or watercourse. Having made this finding, the commission thus addressed the issue of unreasonable pollution or impairment. The commission did not need to make any further analysis. See Connecticut Fundfor the Environment v. Stamford, 192 Conn. 247, 251 (1984).
 g.
The plaintiffs have also claimed that the planning commission erred in denying Mr. Selner the opportunity to submit an alternative plan to that commission at its December 22, 1992 public hearing. Mr. Selner claims that this violated his rights as § 22a-19 intervenor. It should be noted that Mr. Selner (and Mrs. Edelson) were not denied the opportunity to speak or participate as parties. Indeed, Mr. Selner read a report from Michael S. Klein of Environmental Planning Services (Return Item P-GG, p. 37).
A party in an administrative proceeding has the right to introduce relevant exhibits. Parsons v. Board of ZoningAppeals, 140 Conn. 290, 293 (1953). The commission, of course, did not fully understand its role in a § 22a-19 situation. (Return Item P-GG, p. 41). Section 22a-19 applies to planning and zoning commissions. Red Hill Coalition, Inc. v. Town Plan Zoning Commission, supra, 733. Assuming that the exhibit was relevant, the failure to accept it, however, is not fatal. The only allegation of unreasonable pollution or impairment pertains to the wetlands, (Return Item P-GG, p. 40), and that, as the commission appropriately noted, (Return Item P-GG, p. 41), is a wetlands commission issue.
 Section 22a-19 is not intended to expand the jurisdictional authority of an administrative body whenever an intervenor raises environmental issues. Thus, an inland wetland agency is limited to considering only environmental matters which impact on inland wetlands. Other environmental impacts must be raised before other appropriate CT Page 9494 administrative bodies, if any, or in their absence by the institution of an independent action pursuant to § 22a-16.
Middletown v. Hartford Electric Light Co., 192 Conn. 591, 597
(1984) citing Connecticut Fund for Environment, Inc. v.Stamford, supra, 250.
The planning commission was not the wetlands agency; the wetlands commission had ruled that the subject activities were not even regulated. The principle of Arway v. Bloom applies here as well. If the allegation concerned unreasonable pollution, impairment or destruction to the wetlands, and it appears that this was the only concern, the commission could rely on the wetland agency's report. The planning commission did not become the wetland agency simply as a result of the § 22a-19 petition.
 h.
The final segment in this proceeding concerns the applicant's "belt and suspenders" tactic to insure the wetlands decision was not tainted. As previously noted, after the January decisions of both commissions and while both appeals were pending, Fox Hill filed a new application with the wetlands commission "for either (i) a determination that no permit is required or (ii) a permit for any activities deemed to be regulated." (Return Items IW2-A; B). Cognizant of the participation controversy, the applicant specifically requested that the matter not be decided at the earliest date but rather at a later time so that the plaintiffs be given "an opportunity to prepare and to file any written submission they may have" and that "Mr. Selner and Ms. Edelson, either as intervenors at a commission meeting or as part of a formal public hearing, be given the opportunity to speak." (Return Item IW2-B). Accordingly, when the matter appeared on the June 1, 1993 agenda, the commission tabled action until July 16, 1993. (Return Item IW2-D). Both plaintiffs intervened in the matter filing their § 22a-19 verified petitions. (Return Items IW2-E; F).
At the July 6, 1993 meeting, the petitioners filed certain documents, including a copy of "A Report to the Legislature on Pesticides in Ground Water prepared by Timothy R.E. Keeney, Commissioner of Environmental Protection," dated December 1981 (Return Item IW2-I), a letter and copy of "An Inland CT Page 9495 Wetland Commissioner's Guide to Site Plan Review," prepared by Bureau Water Management, DEP, (Return Item IW2-J), and a copy of Preliminary Environmental Study Fox Hill Subdivision, dated June 30, 1993, prepared by Penelope C. Sharp, Environmental Consultant. (Return Item K).[14]
After an introduction by the applicant's attorney, its engineer reviewed the application noting, inter alia, it had not changed since the planning commission referral. (Return Items IW2-L; V-2).
The petitioners were represented by counsel who preliminarily argued that the commission should find that the proposed activity constituted a regulated activity. He then introduced Penelope Sharp who discussed the "potential for erosion" and her belief that the proposed activities were not only regulated but significant. (Return Item IW2-V, p. 9). Ms. Edelson read a letter from Mr. Selner who was unable to attend and also discussed the pesticide report. (Return Items IW2-V, p. 10-14; I).
The commissioners discussed the application and unanimously decided to table any action "pending reports being distributed to all members and a full set of plans for review." (Return Item IW2-V, p. 18-19). The commission next met on September 7, 1993 and after some preliminary and perhaps contentious discussion, Chairman McCarthy moved to approve the new application with standard conditions. During further discussion, Mr. Selner and Ms. Edelson both addressed the commission. A vote to approve the application passed, four in favor, 2 opposed and one abstention. (Return Item IW2-V, p. 9). The applicant was notified by letter on September 29, 1993 that the application was granted contingent on two conditions.
The plaintiffs first argue that the commission erred in determining that the proposal did not constitute a regulated activity. This court is not in agreement because the commission clearly did find that the activity was regulated — it granted a permit. Activities conducted in wetlands (or affecting wetlands) are (1) permitted as of right (General Statutes22a-40(a); Berlin Regulations § 4.1) (Return Item IW1-G), (2) permitted as nonregulated uses (General Statutes § 22a-40(b); Berlin Regulation § 4.2) (Return Item IW1-G), and (3) permitted only by permit (General Statutes § 22a-42a(c); Berlin Regulations § 4.3; 6.1). See generally, Conservation Commission v.CT Page 9496Price, 193 Conn. 414, 423 (1994). The commission had the choice, as initially requested, to determine whether the activity was not regulated (as it had previously determined) or regulated. By issuing the permit, it deemed the activity regulated.
The plaintiffs also argue, however, that the commission should have found that the activities were significant.[15]
(Return Item IW1-G; Berlin Regulations § 2.1; 9). Essentially they posit that the commission should have followed Ms. Sharp's opinion on this issue.
The plaintiffs argue that the commission could not ignore Ms. Sharp's expert testimony citing Feinson v. ConservationCommission, 180 Conn. 421, 429 (1980) and Tanner v. ConservationCommission, 15 Conn. App. 336, 341 (1988). While that certainly is true, the commission also had the well established position of its engineer, Mr. Horbal. The case thus is more akin to the situation in Samperi, supra, 597, in which the agency had to assess the opinions of various experts. As noted by our Supreme Court in Manor Development Corporation v.Conservation Commission, 180 Conn. 692, 697 (1980), a case rendered shortly after Feinson, "an administrative agency is not required to believe any witness, even an expert." In this case, of course, Ms. Sharp acknowledged that she was not a hydrogeologist[16] (Return Item IW2-V, p. 9) and many of her statements were, in fact, expressions of concern for potential problems. The Feinson case, moreover, really concerns issues of fairness and whether an agency in disregarding expert testimony relies on its own knowledge without affording a timely opportunity for rebuttal of its point of view. Id., 429. It can hardly be said that the petitioners were not aware of Mr. Horbal's position. The petitioners clearly received their opportunity to debate this application. See Huck v. Inland Wetlands, supra, 542. For this court to rule that the commission erred in not finding a significant activity, it would be required to substitute its discretion for that of the agency. It cannot do that.
 i.
Finally, the petitioners argue that they were denied a fair hearing arguing that (1) the commission relied on matters raised in the prior proceedings not incorporated into this proceeding and (2) the commissioners were predisposed. CT Page 9497
As to the first argument, while the plaintiffs are correct as to the general rule, this case is different. Everyone surely knew why this application was filed. While technically it was a new application, it was a continuation of the process — it was an attempt by the applicant to calm the troubled waters. It is true that the prior proceedings were not formally incorporated by reference. The prohibition of utilizing matters not incorporated into the present record is, however, based in part, on fundamental fairness and this proceeding was unquestionably fair. Huck v. Inland Wetlands, supra, 542.
The plaintiffs also maintain that the proceeding was unfair because the commissioners predetermined the application. The record indicates that the vote of the January referral was 5-0-1 while this vote, as indicated was 4-2-1. (Return Items IW1-F; IW2-W). The January decision was essentially a finding that the activities were not regulated. The September vote was a complete reversal. As noted by our Supreme Court inCioffoletti v. Planning Zoning Commission, supra, 555,
 We have held that "[t]he law does not require that members of zoning commissions must have no opinion concerning the proper development of their communities. It would be strange, indeed, if this were true." Furtney v. Zoning Commission, 159 Conn. 585, 594, 271 A.2d 319 (1970). As the court noted in In re J. P. Linahan, Inc., 138 F.2d 650, 651-52 (2d Cir. 1943), "[t]he human mind . . . is no blank piece of paper . . . . Interests, points of view, preferences, are the essence of living . . . . An `open mind,' in the sense of a mind containing no preconceptions whatever, would be a mind incapable of learning anything, [and] would be that of an utterly emotionless human being . . . ."
The commissioners had indeed previously acted on this proposal, albeit in a different posture. They also had obtained certain information at a improper meeting. The transcripts of the July and September meetings on this second file indicate that they did not act from improper motives or were not impartial. This application, it must be remembered involved CT Page 9498 no direct activities in the wetlands. This same commission now alleged to be partial, once denied an earlier application due to wetland intrusion and impact.
The burden is on the plaintiffs to prove the hearing was illegal. Senior v. Zoning Commission, 146 Conn. 531, 536
(1959). They have not met this burden.
 III. Conclusion
For the reasons set forth in the above discussion, the three appeals are hereby dismissed.
MARSHALL K. BERGER, JR. JUDGE, SUPERIOR COURT